## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Denver Stone

v.

James M. Quann

October 18, 1994

Case No. CL93-128

By Judge William H. Ledbetter, Jr.

This fraud case was tried with a jury on August 31, 1994. At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence, the court denied the defendant's motion to strike the evidence and enter judgment for him. The case was submitted to the jury on claims of actual and constructive fraud. The jury returned a verdict in favor of the plaintiff and assessed damages at $26,700.00.

The defendant moved the court to set aside the verdict as contrary to the law and evidence. The court took the matter under advisement pending submission of memoranda, and final judgment was reserved. Counsel have now submitted their memoranda. The court has reviewed the memoranda and the record. This letter opinion addresses the defendant's post-verdict motion.

This dispute arises from the sale of residential property in downtown Fredericksburg.

In 1990 and 1991, Mr. Quann rehabilitated a two-and-a-half story residence on Princess Anne Street. Mr. Quann, a licensed plumber, acted as his own general contractor. He obtained permits, the work was inspected by building officials, and the renovation work was approved. According to the plaintiff's evidence, none of these permits, inspections, or approvals pertained to the basement, which at the time was an unfinished basement with a dirt floor. Mr. Quann nevertheless proceeded to do work in the basement, excavating it, installing a step wall, utilities, fireplace, partitions, and appliances and constructing a brick floor.

Mr. Quann then put the property on the market. He listed the property as a two-and-one-half story single-family residence with a finished basement. The house was advertised as "one unit or two units." It is undisputed that the phrase "two units" referred to potential use of the basement as a unit separate and distinct from the main house upstairs.

In response to the advertisements and circulars, Mr. Stone was shown the house. He saw no indication of water problems in the basement. He could tell that the basement had been recently renovated, and he smelled fresh paint in the basement.

On February 20, 1992, Mr. Stone signed a contract to purchase the property for $184,900.00. At settlement, Mr. Stone testified, he asked Mr. Quann about an occupancy permit or City approval for the basement, and Mr. Quann responded that it was not necessary because the basement had been previously occupied.

Mr. Stone acquired the property by deed on April 15, 1992. Thereafter, the basement flooded so that it was uninhabitable, especially as a separate living unit.

According to the plaintiff's evidence, Mr. Quann knew that the basement flooded. Before he sold the property to Mr. Stone, he had used a sump pump to remove water. He admitted that he had repaired the damage and painted over the water marks but said he felt no obligation to inform Mr. Stone of the problems, adding that most basements have similar problems.

Most of the above-mentioned facts were disputed by the defendant's evidence. Counsel for the defendant emphasizes that evidence in his memoranda, just as he did quite ably at trial. However, where a litigant has obtained a jury verdict, he occupies a highly favored position. The verdict should not be set aside unless it is plainly wrong, the result of improper influences or incorrect instructions of law, or is without evidence to support it. The disputed and contradictory evidence that the jury heard, then, must be viewed in a light most favorable to the litigant who prevailed.

First, Mr. Quann argues that the doctrine of caveat emptor precludes a verdict in favor of the plaintiff, particularly in light of the sales contract provisions that allowed the purchaser the right to inspect the property. The cases cited in his memorandum indicate, however, that the principle of caveat emptor affords no protection to a seller who commits fraud by false representations of material fact or by throwing the purchaser off guard by conduct that diverts him from making inquiries and examinations that a

prudent person would make. Thus, the inquiry must focus on the sufficiency of Mr. Stone's evidence of fraud.

Mr. Stone established by expert testimony that the source of the water problem was lack of drainage and waterproofing which should have been installed when Mr. Quann finished the basement and laid the brick floor. These witnesses testified as to the nature of the water problem and further testified that the problem would have been caught and corrected if the basement had been properly inspected by building officials as part of the rehabilitation of the house.

Mr. Stone's evidence also established that the water problem was not merely a leak or moisture. Rather, the flooding made the basement uninhabitable, especially unusable as a separate unit.

Finally, Mr. Stone's evidence showed that he relied on Mr. Quann's representations that the house could be used as two units and that he was misled to believe that the basement work had been done as a part of the house rehabilitation under scrutiny of City building officials so that no separate approval of the basement was necessary.

As for damages, Mr. Stone offered expert testimony regarding the costs necessary to install drainage and waterproofing consistent with the building code and accepted industry standards.

Mr. Quann relies on *Thompson v. Bacon*, 245 Va. 107, 425 S.E.2d 512 (1993), another fraud case involving basement water problems, in which this court was reversed because the evidence was insufficient, as a matter of law, to support a jury verdict finding fraud. There are numerous distinctions between this case and *Thompson v. Bacon*.

First, *Bacon* involved a leaky basement. The fraudulent misrepresentation was the seller's statement about the source of the water stains (overflow of a water basin) and his alleged attempt to hide the seepage with carpet and furniture. Here, the water problem is *flooding*, so severe that the basement is uninhabitable, and contrary to the representation of the seller that the basement was usable as a separate unit.

Second, in *Bacon*, the purchaser hired an inspection service to inspect the house. The inspector reported to the Bacons that there were signs of past dampness in the basement. The inspector opined that the condition was caused by leaking gutters or settlement around the foundation. Here, Mr. Stone did not undertake to inspect, and no one alerted him to a possible or potential water problem. The evidence is clear that Mr. Quann 'd not have discovered the problem using reasonable diligence because

of the nature of the problem and because all signs of past water damage had been repaired and painted over.

Third, in *Bacon*, the Supreme Court held that the source of the water problem had not been shown, thus making it impossible for a jury to attribute the water problem experienced by the purchaser to the water problem about which the seller purportedly lied. Here, the plaintiff's evidence clearly established the source of the problem. His evidence clearly established that the flooding would not have existed if the basement had been finished in compliance with the building code, monitored by the building inspectors as was done with the upstairs renovation, and done according to industry standards. His evidence further established that Mr. Quann knew that the basement flooded. Also, his evidence clearly established that Mr. Quann nonetheless represented the basement to be usable as a separate residential unit and that no separate City approvals were necessary for it.

As noted above, all of these clearly-established facts were disputed by Mr. Quann's evidence. The jury chose to believe the facts as presented by Mr. Stone and his witnesses; thus, all matters of fact, supported by the evidence, must be viewed in Mr. Stone's favor.

The final distinction between *Bacon* and this case is the theories upon which the dispute was presented to the jury. *Bacon* was a case of *actual* fraud. Here, the jury was instructed with respect to actual *and* constructive fraud. No objection was made by the defendant to the constructive fraud instructions; and, in any event, the evidence was sufficient to justify such instructions. Actual fraud requires proof of an intentional misrepresentation of a material fact with the intent to mislead. Constructive fraud is broader, encompassing mistaken or negligent misrepresentations of a material fact with the intent that the other person will rely on the representations. The court instructed the jury on the definition of "misrepresentation," the definition of "material fact," the need for a showing of "reliance" on the misrepresentation, the requirement of diligence on the part of a purchaser, and the duty to investigate. The court instructed the jury, without objection, that it should find for the plaintiff if he had proven actual or constructive fraud by clear and convincing evidence. The court defined "clear and convincing evidence" for the jury. All of the instructions given to the jury are supported by ample authorities and are found in Chapter 39 of the *Virginia Model Jury Instructions — Civil*.

Therefore, from the evidence presented and the instructions properly given, the jury could have concluded that the evidence clearly and con-

vincingly proved that Mr. Quann deliberately lied to Mr. Stone about the availability of the basement as a separate unit, knowing all the while that it was unusable because it flooded and that it flooded because he had finished it without proper City building inspections and without the drainage and waterproofing that the Code and industry standards require; or, the jury could have concluded that the evidence clearly and convincingly showed that Mr. Quann mistakenly or negligently, but not wilfully, misrepresented those facts, nonetheless intending that Mr. Stone would rely on them to purchase the property for use as "one or two units." Because the jury chose to award no punitive damages, it is reasonable to suppose that it adopted the latter view of the case.

For the reasons explained, the defendant's motion to set aside the verdict will be denied, and judgment will be entered in favor of the plaintiff in the amount of $26,700.00, as fixed by the jury verdict, with interest from date of judgment.